Court of Appeals. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Thank you and good morning everyone. The first argued case this morning is on the 19th, 1166, Prestonback v. United States. Mr. Rombo, proceed. Good morning, Your Honors. This is Peter Rombo representing the appellate and plaintiff in this case, Mr. Logan B. Prestonback. I'm from the Hoover Law Firm of Junction City, Kansas. It's an honor and privilege to be able to argue here today on behalf of my client. This case is about a recruitment action at the expense of a West Point education. Recruitment of such tuition assistance is authorized in this case, if at all, both by statute and regulation, only if there is an agreement, emphasized agreement, to reimburse the Army for the cost of that education. The terms of which recite to and refer to certain events, which would authorize recruitment. None of those events took place in this case, including a voluntary failure to complete the agreed upon term, which is the premise for recruitment that has been affected thus far against my client. Now, my client did not complete the term he agreed upon, but he did not do so voluntarily. In fact, he was involuntarily discharged from the Army. In this appeal, we are simply asking this court to call an apple an apple and to recognize my client did not voluntarily fail to complete the term of his commission. This is Judge Reyna. In the case of Favreau, we decided in almost identical language to the recruitment statute here, that the recruitment statute encompasses involuntary separations, where the involuntary separation was caused by the service member's voluntary substandard performance. I don't understand why Favreau doesn't apply in this case and why it's not dispositive. Yes, Your Honor. Thank you. In Favreau, Your Honor, there was no prior determination by the agency that its separation of the service members in that case was, in fact, voluntary or involuntary. That was a separation because these service members could not comply with the gym teacher's requirements that they lose some weight. And they were thus separated from the Army and their termination and then recruitment of bonuses in those cases was affected. In this case, Your Honor, the record is complete, replete with clear and repeated determinations by the Army that my client's separation was, in fact, involuntary. I refer to the record at 1022, 1023, 1026, 1027, 1028-29, 30, and 36. All of these memorandums and determinations are expressly described by the Army, to whom, under applicable law, we are to pay a great deal of deference. This is Judge Stoll. Go ahead, Judge Reyna, please. Going back to Favreau, wouldn't you agree that the language in the recruitment statute in Favreau is almost identical to Section 2005 in this case? Yes. Okay. So, what's your argument, then, that there was notice in Favreau and no notice here as to what constitutes voluntary action? In Favreau, the question was open. There was no expressed determination by the agency as it affected these separations that these people were being voluntarily separated or that involuntary separation was, in fact, voluntary. The court in Favreau engaged in more or less existential arguments about what constitutes voluntary as opposed to involuntary action. That question is not in play here. Here, the Army has repeatedly stated that this discharge was involuntary. Thus, if indeed we are going to pay deference to that determination, we must also conclude that my client was not voluntarily separated or that his actions for purposes of recruitment should be considered to be voluntary. The agency itself has determined that this was an involuntary separation. This is Judge Stoll. Why is this not an involuntary separation because of a voluntary failure to follow orders and meet physical standards? Well, Your Honor, there is, I think, only so much bending of the words, of the meaning of words in this case. My client was, indeed, separated for actions attributed to his performance. The agency makes much of that in the statement of fact as well as in the argument, but ultimately, he was terminated on honorable conditions. DD-214 is in the record in that case. The Army, as it classified that action, determined this was involuntary. I believe that determination distinguishes this case from Favreau in that regard. So, it's your view, and I apologize for interrupting you, but I just make sure I understand your position. It's your view that because the separation was classified as involuntary and honorable that that can't be the result of a voluntary failure as a matter of law? Yes, that is my view. That, in fact, I acknowledge that we are to give the agency a great deal of deference in how to run the Army when people are going to be separated and not separated. In fact, of course, we're not arguing that we should not have been separated. We're simply arguing that the agency itself made that determination, that this was an involuntary separation. Mr. Armbrough, would you comment on... Can you hear me? Mr. Armbrough, would you comment on the government's position that the general federal administrative employment rules apply rather than the contract? Yes, Your Honor. The administrative rules and the statute all refer, ultimately, back to the agreement to serve. Whether or not you reach, maybe reach is not the right word, whether or not you apply contractual rules of interpretation or administrative rules of determination or statutory construction, they all come back to the same place, the same fork in the road, if you will. The same fork in the road is the USMA-50, the agreement to serve. Whether or not it's an administrative or contractual question, the question becomes, under the terms of that agreement, what does voluntary separation consist of? And so I don't believe, in the ultimate analysis, I don't think it matters too much whether you use administrative or contractual rules to take a look at that question. Well, it seems undisputed that the performance was, I don't want to overstate it, but let's say inadequate. Don't you have to really rely on the contract rather than the right of an agency to discipline its workforce? Yes, and we, again, we do not take exception to the fact that we were separated. But we do point out that, indeed, it is a matter of contract or the agreement that that separation was not voluntary. It was, in fact, involuntary. And that is key for purposes of whether or not this recruitment was authorized under that agreement. It is the agency, not the appellant, who is arguing that this separation was involuntary. And with all due respect to court's previous holdings and determinations, we've reached the point where, by administrative means or administrative interpretation, we're on the cusp of saying voluntary is involuntary. It's Orwellian. And, in fact, it's gotten to the point where it makes no difference whether under those, under FABRO, whether or not the separation was voluntary or involuntary. And I think Congress recognized that if, indeed, there was no distinction between those terms, why then would it have been necessary in the year following the year my client entered into this agreement to eliminate that distinction in the statute? And make it clear that it is, what is, in fact, being argued here, that if the Army decides that things, quote, didn't work out or for reasons that are unfavorable to my client, that it wishes to seek recruitment, that it could do so. That's what the statute in 2006 was amended to require. My client, however, and in this regard, it does make a difference whether it's administrative or contract. My client's agreement was dated prior to the effective date of that amendment. It cannot be retroactively affected by that amendment so as to eliminate distinction between voluntary and involuntary, which is what we're arguing here. It seems, this is Judge Reyna. Judge Newman, are we out of time here? No, I was just going to ask if there were more questions from the panel at this stage, so please proceed, Judge Reyna. Okay, I have another question. I'm listening to your argument closely, and it seems to me that this is the argument that the court, that we rejected in Favreau. You're arguing that the recruitment statute, and this is the argument that was made in Favreau, isn't limited to the circumstance of a service member being asked, voluntarily asking to be separated or taking some sort of action that indicates voluntary separation. That's a narrow reading of the recruitment statute in Favreau, and it seems like you're extending that argument now, and you want us to re-decide Favreau in this case. Because, as you agree, the language in both situations, the statutory language, is nearly identical. Yes, it is. So, if we adopt your argument in this case, then we're deciding opposite of Favreau. Your Honor, my distinction between this case and Favreau is that in this case, the Army, prior, as it was separating my client from the Army, I apologize for the thunderstorm in the background, made a determination that was involuntary. In Favreau, such a determination was not made. The statute remains the same, but the facts that you will feed into this mill, so to speak, are different. In this case, it's the Army that made the determination that was involuntary, and it did so repeatedly, and that is well described in the record. Okay. I'll proceed, Judge Rayner. I'm done, Judge Newman. Okay, anyway, we'll save the full rebuttal time. Let's hear from the other side. Mr. Hirschfeld. Thank you, Your Honor. May it please the Court. The Court should affirm the Court of Federal Claims, which upheld the Army Board for Correction of Military Records decision. The Army Board decision was not arbitrary, capricious, without substantial evidence, or contrary... But the Army made a deal when they recruited this person to go to West Point to serve for five years. This charge was honorable. Why doesn't that contract control, rather than the rules of the right of an agency to remove inadequate performers? Well, Your Honor, we believe that based on Larianoff and Bell's Supreme Court decisions, contract law does not apply in the military pay context. Well, then why do they make this contract in the beginning? Your people, students, are recruited to go to the service academies, and they receive a contract. You're saying that that's just meaningless, that the government is not bound by any contractual deal that it makes? Your Honor, based on Larianoff and Bell and Schism, the government, in fact, is bound by statutory pronouncements. Of course, this agreement, the Form 550, was promulgated specifically to be consistent with 10 U.S.C. Section 2005. And also, to answer your question, Judge Newman, this agreement didn't just serve the purpose of him agreeing to serve. It also was his oath of office, and it also registered him for selective service, which, of course, when all of us respond to the selective service mailing that we get when we're younger, that, of course, doesn't amount to a contract with the United States. It is a required statutory undertaking that we all must do. But why do we bother with a contract if it doesn't mean anything? The discharge was honorable. It would be, we'd have a different situation. I have no trouble with it. If there was, if, whether this, if the discharge was dishonorable or even under that intermediate status between honorable and dishonorable, I gather none of that prevailed. Your Honor, I mean, ultimately, the basis of his separation, whether it was honorable or dishonorable, is not, I think, at issue in this case. Ultimately, the question is, is whether or not he volunteered. No, it's not at issue because it's not challenged. The discharge was honorable. Yes, Your Honor, but it was also the discharge related to the voluntariness of his action, which ultimately, whether or not you determine this is, as we would say, it should be administrative given that this comes from an administrative record. It was decided by a board. Under this Court's prior decisions in Mets and Walls, it should be treated as whether or not the board's decision was arbitrary and capricious, and that should be the standard review. But ultimately, the language in the statute and the language in the Form 550 agreement are the same. Under this Court's decision in Radler, you look ultimately to the statute. If a contract, assuming the Court were to go that way, and we, of course, say it shouldn't, it would still bottom at the same point because it would be based on what the statute says because the agreement derives directly from the statute and includes identical terms. Moving on from that, Your Honor, whether or not it's contract or statute, ultimately the question is squarely determined by Favreau. Mr. Pressenbach's counsel stated repeatedly that the facts of Favreau were different in that the plaintiffs in Favreau were not involuntarily separated. In fact, they were. If you look on page 1357 of this Court's decision, it asks, is what voluntary? It is true that the administrative act of separation itself was not voluntary in any meaningful way. Indeed, defendant has stipulated that it involuntarily separated plaintiffs. So, this is on all fours with Favreau. Like Favreau, Mr. Pressenbach was involuntarily separated. But like Favreau, the question isn't in the statute and in the agreement. They both state the same thing, which is whether or not it was the voluntariness of the underlying action. The statute reads, if such a person voluntarily, because of misconduct, fails to complete the period of active duty. Form 550 itself says, if I voluntarily fail because of misconduct fail to complete the period of active duty. The action there is actually the service member's action. It's not the act of separation. In fact, as Favreau pointed out, separation is not used in the recoupment statute. But you see what's bothering me, that there was no assertion of misconduct. There was no finding of anything at all relating to dishonorable discharge. This is my problem. Where these lines are drawn. I understand, Your Honor. And, in fact, if you look at the agreement itself on page 1056 or at the statute itself, there are two bases to be separated. There are two bases when a service member fails to meet his obligation. It can be either based on voluntariness or misconduct. We're not contending that it's misconduct, but that points us back to what does voluntariness mean. And, in fact, Favreau, again, once again states what that means. For example, most actions are going to be voluntary because they're based on the volition of the service member. This court on page 1360 of the Favreau decision said that the exceptions related to voluntariness are if somebody is disabled in the line of duty or his actions are beyond the control of the individual. That comes from the history of the statute. And the court quoted it and took that as a basis to conclude that, in fact, the service members in Favreau should not, you know, avoid recoupment. And, indeed, here Mr. Pressenbach's volitional actions pointed the way that he was substandard in his duty performance. He knew that these actions could lead to separation. In fact, he- Well, Counselor, this is Joe Drennan. Here's where I begin to have a little bit of a problem here. Pressenbach knew that-your argument is that he knew because he had several notices where we're getting to him about his substandard performance, and you view that as being some form of notice, I guess. In Favreau, didn't the form that the person, the service member signed or that applied there, actually state not being physically fit or being overweight is a reason for separation? I don't think so, Your Honor. I think that in Favreau it came from the regulations that were-that applied there. And like, in fact, in Mr. Favreau's circumstance, after the first two referred officer evaluation reports, his third one, which was not the basis of separation-in fact, he did fail the weight test. So, in some ways, he's in the same as Favreau plaintiffs. But, ultimately, I don't believe that was part of their agreement as far as I can recall from the Favreau- Weren't you asking us to give you license to pretty much decide what's voluntary and what's not? It seems that the only clear-cut case of there being a voluntary separation is where somebody comes up and says, I want out. But if they don't say that because they don't want out, they want to stay in, and you separate them under your argument, it could be almost for any reason. I think, ultimately, Your Honor, it can't be for any reason. If he is involuntarily separated or if he involuntarily fails to meet his requirements of the agreement and of the statute, it's because of disability in the line of service. That's one basis. And whether or not it's beyond the control of the individual. And if there's a determination that, in fact, it was beyond his present back control, then, in fact, he should have been – then he would have met that voluntariness standard and we wouldn't be seeking to recoup that money from him. But here, there's no question that what he did was volitional. He failed to follow direct orders. He lacked initiative drive. He performed below other lieutenants, and that's at Appendix 1042 and 1046. How do we know? His discharge was honorable. Are you asking us, surely we can't review the basis of his discharge? Well, I don't think he's contesting his discharge, Your Honor. Certainly not. His discharge was honorable. But it looks as if the government says, never mind. We're going to treat it as if it were dishonorable. Well, Your Honor, somebody can be honorably discharged even if they were not a good performer. You're asking us to decide whether or not – there is no question but that the government was entitled to discharge to decide that this person has not turned out to be a good performer, which perhaps I don't know and can think of all sorts of reasons why it took so long to figure that out. But the question is, what is the consequence when there was an explicit statute which states the obligation of a service academy graduate, which was not quite fulfilled involuntarily? Well, ultimately, Your Honor, we would disagree. We think it was voluntarily. He didn't fail. He was given counseling numerous occasions. Notice of this problem, that's on pages 23 and 1047 of the record. But there was no finding, was there, by the board that he deliberately acted in a way that would get him removed from the Army? Well, I think actually if you do look at the position, it ultimately concludes that the fact that he was involuntarily discharged, they in fact conclude that his actions were voluntary that led to that discharge. So the board does in fact support that conclusion. And ultimately, Your Honor, I think you're having difficulty with the – Mr. Hertzfeld? Oh, I'm sorry? Mr. Hertzfeld, this is Judge Stahl. I understand that this very issue and argument was presented in the Favreau case at page, I think it's 357 to 358, and talks about this very issue and emphasizes that the term separation is not used in the recoupment provisions. Instead, the relevant phrase is complete the term of enlistment. Can you talk about that issue in Favreau? I know you discussed it a little bit earlier, but it seems like it's relevant to the discussion that we're having now as well. Thank you, Your Honor. I think it's absolutely on point. I mean, there's that one paragraph on 1357 and 1358 that makes it very clear that, you know, it asks what is but voluntary in Section 2005 and here in the Form 550 agreement. Ultimately, it's not the act of separation because separation isn't in the statute. It's not in the Form 550. What it looks to is the voluntariness of the underlying behavior. That's, in fact, what this court concluded, and that's in page 1357 and footnote 18 where it makes this point. In fact, the court repeatedly rejected other circuits and other courts that made dissimilar determinations and, in fact, found that voluntariness deals with the underlying behavior and not the act of separation. And if the court follows Favreau, should certainly affirm here. I know I want to also pivot back to something that Judge Newman mentioned. Somebody can be honorably discharged notwithstanding the fact that they may have been a substandard performer because determining whether or not somebody gets an honorable characterization is dependent on whether or not they've conducted, if they've had misconduct. That's one of the main reasons. So if somebody is not discharged based on misconduct, they are probably going to get at least an honorable discharge or at least a neutral discharge if there are other issues. But typically the characterization is an issue, and typically the characterization will relate to misconduct or the person's conduct. Counselor? Yes, Your Honor. In Favreau, we decided that case on the basis of the Sherwin Doctrine, and we looked at the Department of Defense's regulations and gave those regulations the Sherwin deference. Here we don't have a regulation that issued Dewey. No, Your Honor. So all we have is the document that some call an agreement. You say it's not an agreement. So if we take that off the table, then the only thing we have is a statute. Well, Your Honor, actually we also have, unlike in Favreau, what we do have is a board decision. And, of course, this court will uphold that board decision unless it's arbitrary, capricious, contrary to law. This decision is, in fact, consistent with law. It's consistent with the statute. It's consistent with Favreau, and therefore it should be upheld for that reason. So in that circumstance, this court is looking at that board determination based on, you know, this court's precedent. And once a plaintiff goes or a service member goes to the board, this court reviews it as an administrative action and applies that standard. And we would say that it's clear that what the board did was proper and was not contrary to law. So in some sense, it's not Chevron deference, Your Honor, but it follows the standard procedure that this court uses in hearing board determinations. Okay. I'm sorry. Any more questions for Mr. Hirschfeld? Hearing questions, Your Honor, the United States respectfully requests that this court affirm the decision below and follows the Favreau decision. Thank you. Okay. Thank you. Mr. Rambo, you have your rebuttal time. Just a few minutes, Your Honor, and thank you. The board that Mr. Hirschfeld just referred to, in fact, found this to be a question of breach of agreement. That's found in the record at page 1008, where they did indeed construe this to be a question of whether or not my client complied with the terms of his enlistment agreement. And it is an agreement. Acceptance of an agreement or a contract can be demonstrated by performance. And, of course, after my client signed this agreement, he went to West Point, and there was a locker there with his name on it, and they put the uniform on it as well. But the government didn't sign the agreement, did they? No, they did not, Your Honor. Typically, when we have a government contract case, we have someone with authority that signs the agreement or that takes action that gives authority to the agreement. I don't see that. I see that lacking here. Yes, it does. There is no signature or express approval of it. But, indeed, it's demonstrated by the Army's performance of this agreement. It's clear that the Army believed there was an agreement. In fact, the Board found that there was a breach of agreement in this case. The statute expressly authorizes recruitment if there is a written agreement with the Secretary under the terms of which that person shall agree to reimburse the Army if he did not complete his ADSO as specified in the agreement. And, of course, that gets us back to where we began, voluntary separation. And whether or not Chevron deference is applied here or not, the question is, unlike Favreau in this case, as my client was going through this, he was repeatedly informed that he was being involuntarily separated. If we give deference to the Army determinations in that regard, recruitment should not be authorized in this case, and he should be reimbursed for that which has been recouped thus far. Thank you. Any more questions? Thank you. Thank you both. The case is submitted.